IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KATHERINE GUINNANE, individually, and as Personal Representative for the Estate of EDWIN GUINNANE, and GUINNANE RANCH LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>NANCY DOBBINS, as Personal Representative for the Estate of ROBERT DOBBINS, EAN HOLDINGS, LLC, ENTERPRISE RAC COMPANY OF MONTANA/WYOMING, LLC, d/b/a ENTERPRISE RENT-A-CAR, and JOHN DOES 1-5,<br><br>　　　　　　　Defendants.<br>_____<br><br>EAN HOLDINGS, LLC, and ENTERPRISE RAC COMPANY OF MONTANA/WYOMING, LLC, d/b/a ENTERPRISE RENT-A-CAR,<br><br>　　　　　　　Cross-Claimants,<br><br>　vs.<br><br>NANCY DOBBINS, as Personal Representative for the Estate of ROBERT DOBBINS,<br><br>　　　　　　　Cross-Defendant. | CV 19–85–M–DWM<br><br>OPINION<br>and ORDER |

This is an action for wrongful death and personal injury arising out of an automobile crash on Highway 41 in Jefferson County, Montana. In July 2015, a Dodge truck pulling a horse trailer owned by Guinnane Ranch, LLC and driven by Edwin and Katherine Guinnane was involved in a collision with a Dodge Journey driven by Robert and Nancy Dobbins. The Journey was leased from Defendant Enterprise RAC of Montana/Wyoming and owned by Defendant EAN Holdings (collectively "Enterprise" or "Enterprise Defendants"). Both Edwin and Robert were killed. Katherine and Nancy suffered serious injuries. Katherine, on behalf of herself and her husband's estate, in conjunction with Guinnane Ranch, LLC (collectively "Plaintiffs") sued Nancy Dobbins, as Personal Representative for the Estate of Robert Dobbins ("Dobbins"), alleging negligence (Count 1) and negligence per se (Count 2). (Doc. 16.) Plaintiffs also sued Enterprise, alleging negligent maintenance (Count 3) and seeking punitive damages (Count 4). (*Id.*) Enterprise cross-claimed against Dobbins, alleging contractual defense and indemnification (Count I) and contribution (Count II). (Doc. 26.)

There are two pending motions for summary judgment. Dobbins seeks summary judgment on the amount of recoverable damages. (Doc. 68.) Enterprise seeks summary judgment on its liability under the Amended Complaint. (Doc. 71.) Both motions were briefly addressed during an August 12, 2020 hearing. (*See* Min. Entry, Doc. 122.) For the reasons discussed on the record and outlined below, the motions are denied.

ANALYSIS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material if they have the potential to affect the outcome of the case and there is sufficient evidence for a jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## I. Dobbins' Motion on Recoverable Damages

Dobbins seeks to limit the execution of recoverable damages against the Estate to $1 million, or the available insurance proceeds. That motion is premature. If the jury find Dobbins liable and returns a damages verdict in excess of $1 million after hearing the proof at trial, Dobbins may seek to limit the execution of that award consistent with Montana Code Annotated § 72–3–803 and *Locke v. Estate of Davis*, 350 P.3d 33, 37 (Mont. 2015). At this stage of the proceeding, the motion is denied.

## II. Enterprise's Motion

Enterprise argues that (a) there is no genuine dispute that Edwin Guinnane caused the collision and the presence of mismatched tires on the Dodge Journey is insufficient to create a genuine dispute of fact as to liability; (b) as solely the title holder, EAN Holdings cannot be held liable for negligent maintenance; (c) Plaintiffs cannot prove actual malice; and (d) Plaintiffs cannot pursue a claim

3

for survivorship.  While the motion for summary judgment is denied, Enterprise may seek relief under Rule 50 depending on the proof at trial.

   A.   **Cause of Accident**

Enterprise first argues that the undisputed facts show that Guinnane, not Dobbins, caused the accident, making the presence of mismatched tires on Dobbins' vehicle immaterial.  But the cause of the collision is the fundamental dispute in the case.  There is—at a minimum—inconsistent eyewitness testimony about which vehicle was in which lane at which time.  (Doc. 106 at ¶¶ 4–5, 46, 47.)  Additionally, the record contains witness statements indicating Robert Dobbins may have been disoriented and that the Dodge Journey may have drifted back and forth between the fog and center lines directly before the accident.  (*Id.* at ¶ 45.)

There is also a genuine dispute whether the Journey's tires contributed to the accident.  Enterprise's internal maintenance policies define specific characteristics of tire tread and wear that raise a question whether the Journey should not have been rented in its condition.  (*See, e.g.*, *id.* at ¶¶ 73–74; Doc. 108-7; Doc. 109-2 at 26 ("Check tire condition, pressure, and tread depth; report damage."); Doc. 109-3 at 26–27.)  For example, according to Marlon Miles, an Assistant Manager at the Enterprise location in Missoula, one of the Journey's rear tires appeared to have been worn improperly and the car should have been set aside.  (Doc. 106 at ¶¶ 67–68, 75; Doc. 107-24 at 74–75.)

In addition to the question of the specific tread on the Journey is the allegation that the Journey had four "mismatched" tires.  The owners' manual for the Dodge Journey states that the safe operation of the vehicle requires consistent tire size and type.  (Doc. 106 at ¶ 65; Doc. 106-7 at 750–51, 756.[1])  It further warns that inconsistency between tires can cause unpredictable handling, specifically noting the difference between summer tires and all season or mud and snow tires.  (*Id.*)  At the time of the accident, the Dodge Journey had four different brands or models of tires, each with different tread depths.  (Doc. 106 at ¶ 62; Doc. 106-1 at 34.)  One of the tires was a mud and snow tire.  (Doc. 106-1 at 34.)  Plaintiffs also present evidence that Enterprise has adopted a practice of allowing individual tires of varying brands with varying tread depth to be replaced on rental vehicles.  (*See* Doc. 107-23 at 183.)  There is a dispute whether this practice contravenes industry standards as a number of tire manufacturers specifically recommend replacing all four tires at the same time.  (Doc. 107-10 at 2; Doc. 107-11 at 3; Doc. 107-12 at 1; Doc. 107-13 at 1; Doc. 107-14 at 2.)

Further, Plaintiffs have disclosed two experts to opine on the causation question.  According to accident reconstructionist Harry Townes, review of the scene and computer simulations of the accident do not fully support the collision location and series of events described in the Highway Patrol accident report.  (*See*

---

[1] Page citations are to the Guinnane BATES stamp, not a CM/ECF page number.

Doc. 89-2 at 5.) And, according to tire expert Martin Westland, the presence of "mismatched" tires on the Dodge Journey negatively affected driveability and impacted how the vehicle responded to steering inputs. (*See* Doc. 92-1 at 2–3.) While not necessary to resolve the present motion, these opinions reinforce the existence of disputed facts surrounding the accident.[2]

Taken together, this evidence raises a genuine dispute of material fact whether the tires on the Journey contributed to the accident. Summary judgment is not appropriate on the question of negligence.

### B. EAN Holdings' Liability

Enterprise further argues that "[r]egardless of the outcome of the negligent maintenance claim, judgment must be entered for EAN Holdings because it was not responsible for the maintenance of the Dodge Journey and neither Montana nor federal law allows a mere owner or title holder of a vehicle to be held vicariously liable for the alleged negligence of a renter." (Doc. 73 at 12–13.) EAN Holdings is correct that under both Montana and federal law, mere ownership of a vehicle is an insufficient basis to impose vicarious liability. *Ulrigg v. Jones*, 907 P.2d 937, 940 (Mont. 1995); *Forrester v. Kuck*, 579 P.2d 756, 759 (Mont. 1978); 49 U.S.C. § 30106(a). But, contrary to EAN's characterization, Plaintiffs' claim is *not* "based solely on the company's ownership of the Dodge Journey." (Doc. 73 at

---

[2] The defendants unsuccessfully sought to exclude these experts pursuant to Federal Rule of Evidence 702. Those motions are addressed by separate order.

15.) Plaintiffs allege direct negligence by both Enterprise Defendants, which, if true, would take this case outside of the limits placed on vicarious liability. (Doc. 16 at ¶¶ 40–41); *see Parker v. Auto-Owners Ins. Co.*, 2020 WL 488366, at *3 (W.D. Wis. Jan. 30, 2020).

On the question of direct liability, Enterprise argues that EAN Holdings delegated its maintenance and safety duties entirely to Enterprise EAC pursuant to the parties' lease agreement. (Doc. 107-5 at ¶ 4(h).) Even assuming such delegation is appropriate, the lease agreement does not address minimum maintenance or safety standards or clarify which entity is responsible for creating or enforcing Enterprise's maintenance policies and "best practices." (*See, e.g.*, Doc. 107-23 at 18 (McNeir indicating that while training is done locally, maintenance and training procedures are provided by a different entity "[a]s to establish a standard across all operating groups").) And, EAN Holdings is further implicated because it appears those policies are established by an entity known as the "Crawford Group," which "fall[s] under the umbrella of EAN Holdings." (Doc. 106 at ¶¶ 88, 90; Doc. 107-23 at 19.) This is sufficient to raise a genuine dispute regarding EAN Holdings' direct liability as it relates to the safety and maintenance of vehicles leased to Enterprise RAC. Thus, EAN Holdings remains in the case, subject to proof of its negligence at trial. *See* Fed. R. Civ. P. 50.

### C. Punitive Damages

Enterprise argues that Plaintiffs' punitive damages claim fails "because there is zero evidence of actual malice." (Doc. 73 at 15.) Punitive damages are authorized only "when the defendant has been found guilty of actual fraud or actual malice." Mont. Code Ann. § 27-1-221(1). "[A] defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff." § 27-1-221(2). At trial, Plaintiffs have the burden to prove "actual malice" by clear and convincing evidence. § 27-1-221(5). But at this stage, Plaintiffs need only raise a genuine dispute of fact. They do so here. The record contains evidence that Enterprise was aware that putting mismatched or unevenly worn tires on a rental vehicle could create a high probability of damages to drivers but did so anyway, (*see* Doc. 110 at 31–32 (summarizing record)), and had a policy of replacing individual tires despite the risk, (*see* Doc. 107-23 at 183). Plaintiffs have presented sufficient evidence to raise a genuine dispute of material fact regarding punitive damages.

### D.     Survivorship

Finally, Enterprise argues Plaintiffs cannot pursue a survivorship action because Edwin Guinnane's "death was instantaneous." *See Starkenburg v. State*, 934 P.2d 1018, 1030 (Mont. 1997). While Plaintiffs have the burden to show the decedent survived "an appreciable amount of time," *id.* at 1031, they argue a jury could reasonably find that Edwin lived long enough when he swerved to potentially avoid the collision to "experience[] mental anguish and fear of loss of

8

life," (Doc. 110 at 33; Doc. 106 at ¶ 55). Though sufficient to survive summary judgment, Plaintiffs' burden is clear, and this issue may be ripe for a Rule 50 motion following Plaintiffs' case.

## CONCLUSION

Accordingly, IT IS ORDERED that the motions for summary judgment (Docs. 68, 71) are DENIED.

DATED this <u>13th</u> day of August, 2020.

_____
Donald W. Molloy, District Judge
United States District Court