IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| KATHERINE GUINNANE, individually, and as Personal Representative for the Estate of EDWIN GUINNANE, and GUINNANE RANCH LLC,<br><br>            Plaintiffs,<br><br>  vs.<br><br>NANCY DOBBINS, as Personal Representative for the Estate of ROBERT DOBBINS, EAN HOLDINGS, LLC, ENTERPRISE RAC COMPANY OF MONTANA/WYOMING, LLC, d/b/a ENTERPRISE RENT-A-CAR, and JOHN DOES 1-5,<br><br>            Defendants.<br>_____<br><br>EAN HOLDINGS, LLC, and ENTERPRISE RAC COMPANY OF MONTANA/WYOMING, LLC, d/b/a ENTERPRISE RENT-A-CAR,<br><br>            Cross-Claimants,<br><br>  vs.<br><br>NANCY DOBBINS, as Personal Representative for the Estate of ROBERT DOBBINS,<br><br>            Cross-Defendant. | CV 19–85–M–DWM<br><br>OPINION<br>and ORDER |

This is an action for wrongful death and personal injury arising out of an automobile crash on Highway 41 in Jefferson County, Montana. In July 2015, a Dodge truck pulling a horse trailer owned by Guinnane Ranch, LLC and driven by Edwin with Katherine Guinnane as a passenger, was involved in a collision with a Dodge Journey driven by Robert and his passenger, Nancy Dobbins. The Journey was leased from Defendant Enterprise RAC of Montana and Wyoming and owned by Defendant EAN Holdings (collectively "Enterprise"). Both Edwin and Robert were killed. Katherine and Nancy each suffered serious injuries. Katherine, on behalf of herself and her husband's estate, in conjunction with Guinnane Ranch, LLC (collectively "Plaintiffs") sued Nancy Dobbins, as Personal Representative for the Estate of Robert Dobbins ("Dobbins"), alleging negligence (Count 1) and negligence per se (Count 2). (Doc. 16.) Plaintiffs also sued Enterprise, alleging negligent maintenance (Count 3) and seeking punitive damages (Count 4). (*Id.*) Enterprise cross-claimed against Dobbins, alleging contractual defense and indemnification (Count I) and contribution (Count II). (Doc. 26.)

In anticipation of trial, Plaintiffs have disclosed crash reconstruction expert Harry Townes and tire expert Martin Westland. The defendants seek to exclude both, primarily challenging the factual bases and reliability of their opinions. (Docs. 88, 91, 95, 97.) The defendants also seek to strike Westland's August 10 supplemental report as untimely. (Docs. 118, 120.) Argument was heard on August 12, 2020. (*See* Min. Entry, Doc. 122.) For the reasons discussed on the

record and provided below, Townes and Westland are permitted to testify. Nevertheless, certain opinions are limited or excluded, primarily based on argument set forth by Dobbins at the hearing, and Westland's August 10 report is stricken.

## ANALYSIS

Admissibility of expert opinion is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>   (b) the testimony is based on sufficient facts or data;
>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

In its gatekeeping role, the district court must determine the proffered opinions are both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Expert opinions are relevant if they "logically advance a material aspect of the party's case." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (internal quotation marks omitted). Expert opinions are reliable if they are the product of sound methods and principles. *Id.* The focus is on the expert's process, not the correctness of his or her conclusions. *Daubert*, 509 U.S. at 595.

3

District courts have broad discretion in determining how to assess an expert's reliability. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). While the inquiry must be specific to the facts of each case, *id.*, the Supreme Court has identified four factors to consider: (1) whether the theory or technique has been tested, (2) whether the theory or technique has been subject to peer review and publication, (3) the potential error rate, and (4) whether the theory or technique is generally accepted within the relevant scientific community, *Daubert*, 509 U.S. at 593–94. The list is non-exhaustive and may not be applicable in all cases. *Id.* at 594. Signs of a faulty methodology include the failure to rule out other causes, forming opinions before examining the data, and conclusions that differ from those of other professionals who followed the same process. *Clarr v. Burlington N. R.R.*, 29 F.3d 499, 502 (9th Cir. 1994); *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

**I.     Townes**

The defendants seek to exclude the opinion testimony and computer simulations of Plaintiffs' crash reconstruction expert Harry Townes on the grounds they are not supported by the factual record and are not reliable. Townes has prepared two reports, an initial report dated November 14, 2018, (Doc. 89-1), and a June 6, 2020 rebuttal report, (Doc. 89-2). His opinion is that the Dobbins vehicle, not the Guinnane vehicle, caused the accident. (Doc. 89-1 at 7.) That opinion is

based in part on a 3-D model "Human-Vehicle-Environment" ("HVE") collision simulation program. (*Id.*)

### A. Factual Basis

The defendants first argue that Townes' opinion that the Dobbins vehicle caused the accident is inconsistent with the physical evidence, the eyewitness testimony, and the findings and investigation of the Montana Highway Patrol. But Plaintiffs persuasively argue that there is factual evidence supporting Dobbins' liability that goes beyond mere speculation. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (clarifying that expert testimony cannot be based solely on speculation of underlying facts). For example, one eyewitness that was driving behind the Guinnanes at the time of the accident indicated in her initial statement that the Guinnane vehicle "seemed to be trying to get out of the way of the red van [the Journey]" at the time, (Doc. 106-1 at 37), though she later said she did not see the red van until it had been struck, (*id.* at 30, 31). An eyewitness traveling the other way also said that he saw "the northbound car [the Journey] went into the southbound lane and when the horse [trailer] tried to avoid it, the other car went the same direction and they collided in the ditch." (*Id.* at 39.) Though the eyewitness accounts are not fully consistent with the Montana Highway Patrol's conclusions, the defendants inappropriately ask the Court to assume the credibility and correctness of those conclusions; that determination falls squarely with the jury. While there are arguments and inferences both sides

5

can make based on the record, it does not foreclose Townes' opinions or his reconstruction of the accident. And Townes directly addresses the Highway Patrol's allegation of "left-right lane reversal misconception" by the second eyewitness and the assumptions the Highway Patrol made regarding the location of physical debris at the scene. (*See* Doc. 89-2.) Townes did not simply adopt Plaintiffs' version of events. Rather the record contains a enough fact to support his opinions. Fed. R. Evid. 702(b).

    **B.**    **Reliability**

Though the defendants' criticisms are numerous, only a select few speak to Townes' reliability as an accident reconstruction expert. The defendants argue that Townes lacks both experience and personal knowledge regarding the HVE program and the road modeling it uses. But the record shows that Townes is an experienced accident reconstruction expert that has used the HVE program before. (*See* Doc. 89-2 at 8); *Smith v. Ardew Wood Prods., Ltd.*, 2009 WL 691133 (W.D. Wash. Mar. 6, 2009) (accepting use of HVE software). His report clearly states the facts that went into the creation of his simulations and how the simulation operates. (Doc. 89-1 at 8–11.) His timely rebuttal report addresses specific criticisms of both the factual basis of his conclusions and his methodology. (*See* Doc. 89-2.) Thus, Townes meets the reliability requirements of Rule 702.

Townes has a Ph. D. in mechanical engineering, (Doc. 89-1 at 12), taught courses on accident reconstruction, (*id.* at 18), researched photogrammetry code

and computer code for accident reconstruction and vehicle rollover simulations, (*id.* at 21), attended special courses on crash data retrieval ("CDR"), (*id.*), and testified as an expert in eight cases in the last four years, including at least four vehicle collision cases, (*id.* at 22–23).  In the present case, Townes reviewed photographs of the scene, the Highway Patrol crash reports, and witness statements, and personally inspected the vehicles and the accident scene within two days of the collision.  (*Id.* at 11.)  In performing the simulations, Townes input various data units, including characteristics of the vehicles, speeds, throttles, angle of the vehicle at the point of impact, and steering data.  (*Id.* at 8–11.)  He then used that information to create base data for an HVE 3-D model of the scene, running simulations of the vehicle "run-out" paths based on various collision positions. (*Id.*)  Contrary to the defendants' argument, Townes need not be correct for his opinion to be admissible.  It is sufficient for Townes to outline the variables that went into his simulation and show they reflect the conditions of the actual incident: "There is nothing inherently unreliable or suspect about computer simulations as evidence.  But every simulation of a physical process embodies at least some simplifying assumptions, and requires both a solid theoretical foundation and realistic input parameters to yield meaningful results."  *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001). What Townes did and why he did it, are subjects for vigorous cross-examination and any argument that

7

he should have run other simulations or included alternative information, can be challenged by questioning his methodology on cross-examination.

Ultimately, the Court's gatekeeping role is meant to "screen the jury from unreliable nonsense opinions, but not to exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Consequently, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Townes' proffered testimony is sufficiently reliable to meet the requirements of *Daubert*.

Even if the Court finds that the Rule 702 threshold is met, Dobbins argues Townes' computer simulations should be excluded as unduly prejudicial under Rule 403. Because the premise of that request is the simulations' inherent unreliability, it falls with the Rule 702 ruling above.

### C.     Comparative Negligence Opinion

Though not specifically challenged by the defendants, Townes' second opinion states "[t]here was no comparative negligence on the part of Mr. Guinnane." (Doc. 89-1 at 10.) While Townes may testify to the circumstances he opines that led to the accident and the location of the vehicles (as outlined in the bases for this opinion), his opinion about comparative negligence as phrased uses conclusory legal language that inappropriately instructs the jury on an ultimate

8

issue. *See* Fed. R. Evid. 611, 704. As a consequence plaintiff's counsel is admonished to instruct the witness to stick to engineering principles and leave the question of fault to the jurors where it rightly belongs.

## II.  Westland

Westland was hired to investigate whether the condition of the tires on the Dodge Journey caused or contributed to the accident. He has prepared three reports, an initial report dated May 8, 2020, (Doc. 92-1), a June 4, 2020 rebuttal report, (Doc. 98-7), and an August 10, 2020 supplemental report, (Doc. 114-2). The defendants seek to exclude the opinions outlined in his first two reports on the grounds that the factual premise of his opinion (that Dobbins lost control of his vehicle) is not supported by the evidence; he is unqualified to testify about accident reconstruction or crash data; his opinions regarding the impact of the tires is speculative; and he failed to disclose necessary calculations, making his opinion unreliable. They further seek to strike his August 10 report in its entirety.

### A.  Factual Basis

For the reasons discussed in the context of Townes, there is a enough factual record to allow Westland's opinions that Dobbins, not Guinnane, caused the accident. Thus, the defendants' first challenge to Westland fails.

### B.  Qualifications

Westland is a mechanical engineer that has both taught at Montana State University and privately consulted for several years. (Doc. 98-3 at 12, 16–17.) He

9

has previously consulted on tire-related issues, (*see* Doc. 114-1), and, in the context of this case, studied technical documents concerning the effect of the tires on vehicle behavior, (Doc. 98-3 at 5); reviewed accident scene data, reports, and witness statements, (*id.* at 4); and ran his own calculations based on that data, (*id.* at 6–11). The defendants argue, however, that Westland is not qualified to testify about accident reconstruction matters as he admitted that he has not used CDR data to analyze any other accident. (Doc. 92-2 at 13.) However, Westland clarified in his deposition that what he pulled from the CDR was vehicle speed and steering input and that he has used that type of data in other cases. (*Id.*) When specifically pushed on the question of whether the steering input data from the CDR was different from other such data he had relied on previously, Westland explained how the data was fundamentally the same and how it is used. (*Id.* at 13–15.) Based on the foregoing, Westland has the specialized knowledge, experience, and education to render opinions about tire performance, including how vehicle speed, throttle setting, steering wheel input, and brake application information taken from the CDR may impact that performance. *See* Fed. R. Evid. 702. Dobbin's point that Westland's speculation about where the Journey was in relation to the centerline of the roadway is well taken. Westland is prohibited from using the CDR data to explain the physical location relative to the lanes of travel of the vehicles at issue here, as discussed below.

    **C.**    **Undisclosed Calculations**

The defendants argue that Westland failed to disclose the calculations underlying his conclusions surrounding the location of the Dodge Journey at the time of impact and its ultimate resting point on the shoulder. When this issue was raised in his deposition, Westland admitted that he did not know which direction the Journey was pointed but that "the information about speed and steering wheel input dictates a certain amount of lateral displacement of the vehicle." (Doc. 92-2 at 6.) When asked if the calculations underlying this displacement were in his report, Westland admitted they were not but qualified "by saying that those are very crude calculations, very very crude. It doesn't mean they're inaccurate, but it means that they need to be refined." (*Id.*) As the deposition continued, Westland repeatedly stated that his calculations regarding the location of the Journey were "rough" and "need[ed] to be refined." (*See id.* at 7.) And when further pressed on whether the extent of the lateral displacement could be discerned from the CDR, Westland conceded that it could not but stated that the other available information about the crash (such as the steering ratio on a 2014 Journey) allows for a lateral displacement determination. (*Id.*) But he then readily admits that he "didn't put that in [his] report." (*Id.*; *see also id.* at 10.) In the absence of supporting data, Westland is prohibited from testifying that the Dodge Journey was in the incorrect lane of travel or crossed the center line. To be clear, this does not limit Westland's ability to opine on how tire performance affects drivability given the speed and

steering input information available. It is solely the specific location of the vehicles that is beyond the bounds of his testimony.[1]

### D. August 10 Report

On August 10, 2020 (the same date Plaintiffs' response brief was due), Plaintiffs disclosed Westland's "First Supplemental Report." (Doc. 114-2.) That three-page document discloses that since authoring his first two reports, Westland was able to drive an "Exemplar Journey" and that his driving of that vehicle confirmed his prior opinions about Dobbins' steering input at the time of the accident. (*Id.*) Although Plaintiffs title this report "supplemental," a Rule 26(e)(1) supplement may only be filed to correct inaccuracies or fill in "the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). Put differently, a party cannot use untimely supplementation under Rule 26(e) to provide information, reasoning, or opinions that "Rule 26 requires be disclosed in the critical initial disclosure." *Speaks v. Mazda Motor Corp.*, 2018 WL 882815, at *2 (D. Mont. Feb. 14, 2018) (internal quotation marks omitted). At the August 12 hearing, Plaintiffs argued the information could not have been provided earlier because it was difficult to obtain a 2014 Dodge Journey Exemplar. But the report

---

[1] While only one opinion (No. 2) specifically addresses the location of the vehicles respective to the lanes of travel, (Doc. 92-1 at 2), the sections titled "CDR Analysis" and "Observations" are replete with such references, (*see id.* at 8–10).

indicates that vehicle was obtained as early as July 11, (Doc. 114-2 at 2), and even if that were not the case, this accident occurred over three years ago, well before any disruption caused by the coronavirus. Plaintiffs provide no valid reason why the August 10 information could not have been disclosed earlier. Furthermore, at the hearing, counsel's effort to justify the late report comes awfully close to "fudging" about the facts, an unwelcome proposition. Westland's late disclosure is not permitted by Rule 26(e).

## CONCLUSION

Accordingly, IT IS ORDERED that the defendants' motions to exclude Townes (Docs. 88, 95) are GRANTED IN PART and DENIED IN PART. The motions are GRANTED insofar as Townes is prohibited from testifying in terms of "comparative negligence." They are DENIED in all other respects.

IT IS FURTHER ORDERED that the motions to exclude Westland (Docs. 91, 97) are GRANTED IN PART and DENIED IN PART. The motions are GRANTED insofar as Westland is prohibited from testifying that the Dodge Journey crossed the center line. They are DENIED in all other respects.

IT IS FURTHER ORDERED that the defendants' motions to strike Westland's August 10 report (Docs. 118, 120) are GRANTED. Unless the defendants open the door, Westland is prohibited from testifying to any opinions or data not disclosed in either his May 8 or June 4 reports.

DATED this 13th day of August 2020.

_____ 13:43 PM
Donald W. Molloy, District Judge
United States District Court

14